UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JOHN W. LYNN and GERALYNN LYNN,

                              Plaintiffs,

                    - against -                              **OPINION AND ORDER**

ROBERT J. MCCORMICK, MICHELLE SIMMONS,            No. 17-CV-1183 (CS)
TRUSTCO BANK, THE LAW OFFICES OF MCNAMEE
TITUS, LOCHNER & WILLIAMS P.C., KENNETH
GELLHAUS, PETER A. PASTORE, KEVIN LAURILLIARD,
FRANCIS J. SMITH, BAILEY, KELLEHER & JOHNSON,
P.C., and JOHN W. BAILEY,

                              Defendants.
-----------------------------------------------------------------------x

Appearances:

John W. Lynn
Geralynn Lynn
Pomona, New York
*Plaintiffs Pro Se*

Jonathan B. Nelson, Esq.
Dorf & Nelson LLP
Rye, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the motion to dismiss of Defendants Robert J. McCormick; Michelle Simmons; Trustco Bank; The Law Offices of McNamee Titus Lochner & Williams P.C.; Kenneth Gellhaus; Peter A. Pastore; Kevin Laurilliard; Francis J. Smith; Bailey, Kelleher & Johnson, P.C.; and John W. Bailey (collectively "Defendants"). (Doc. 47.) For the following reasons, the Defendants' motion is GRANTED.

1

## I. BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiffs' Amended Complaint. (Doc. 38 ("AC").)

### A. Facts

Plaintiffs John Lynn and Geralynn Lynn (collectively "Plaintiffs") are a married couple who own businesses in New York. (*Id.* ¶ 3.) In 2003, Defendant Trustco Bank ("Trustco") extended financing to one of Mr. Lynn's businesses, Lynn Homes, totaling $5,200,000. (*Id.* ¶ 17.) The loans were secured by mortgages in favor of Trustco on real property referred to as the "Highgate properties," and Mr. Lynn executed a personal guarantee as well. (*Id.*) The loans were to be paid back over time as the properties were sold. (*Id.*) On September 5, 2006, "the installment loan was paid down with a remaining balance [of] $950,000." (*Id.* ¶ 18.) Mr. Lynn then sought and received an additional cash amount of $550,000, "bringing the outstanding [l]oan to $1,500,000," and Lynn Homes executed a new note on September 25, 2006. (*Id.*)

On or about July 17, 2008, Mr. Lynn offered Trustco a deed in lieu of foreclosure after he was unable to sell the properties. (*Id.* ¶ 19.) By then, the indebtedness had risen to $2,300,000. (*Id.*) Trustco instead accelerated the loan, issued a demand for payment of all amounts due, and on October 17, 2008, brought an action in New York Supreme Court in Schenectady County against Lynn Homes, Highgate Development Corp., and Mr. Lynn (the "2008 Action"). (*Id.* ¶ 21.) Later that month, Lynn Holmes filed a petition for Chapter 11 bankruptcy in the Southern District of New York, listing among its debts the amounts owed to Trustco. (*Id.*) Two judgments were entered in the 2008 Action in Trustco's favor: first, an August 24, 2009 judgment in the amount of $2,787,831; and second, a December 2, 2009 judgment in the amount of $35,409.50 for attorney's fees. (*Id.* ¶ 22.)

In 2009, Mr. Lynn wrote a book titled *Highgate to Hell*, which detailed his experiences in the construction and sale of custom homes and identified "outrageous government failures, oppression and retaliation that left him exposed." (*Id.* ¶ 23.) He sent a copy of the book to Defendant McCormick, Trustco's CEO, "in an effort to explain to [Trustco] the rational[e] for [his] inability to service his loan, and to ask for more time to be able to sell the properties, without the risk of having the bank seize his personal assets." (*Id.*) After Plaintiffs' attempts to resolve the matter with Defendants failed, a second copy of Mr. Lynn's book was sent to Defendant McCormick in or around mid-May 2010. (*Id.* ¶ 24.)

Defendants elected to pursue Mr. Lynn on the note. (*Id.* ¶ 25.) At a deposition, Mr. Lynn stated that he was the sole owner of another business entity, Pearl Mont Commons, LLC ("PMC"), which he asserts was an "honest mistake," in that he and his wife each owned fifty percent of PMC. (*Id.*) In October 2010, Trustco commenced another action in New York Supreme Court in Schenectady County (the "2010 Action"), seeking, "among other things, to enforce the above referenced judgments by seeking to avoid certain transfers by [John Lynn] to Geralynn Lynn . . . and seeking a judicial determination that said transfers were in fact fraudulent conveyances." (*Id.* ¶ 27 (internal quotation marks omitted).) Apparently the transferred assets related to PMC because Plaintiffs assert that "[t]his lawsuit was very deceptive" in that Defendants knew PMC was jointly owned. (*Id.*) Plaintiffs further allege that Defendants improperly sought an injunction in the 2010 Action by withholding information from the court that would have undermined their claim for such relief. (*See id.* ¶¶ 28-33.)

On June 10, 2013, Trustco commenced a mortgage foreclosure action in New York Supreme Court in Rockland County to recover the real property securing its loans to Mr. Lynn. (*Id.* ¶ 39.) Plaintiffs allege that Defendants made false statements in their complaint and in other

court filings by averring, for example, that the Rockland County Sherriff returned an execution unsatisfied when, according to Plaintiffs, no such execution via the Rockland County Sherriff was ever attempted. (*Id.* ¶¶ 39, 43, 46.) The same false statement was allegedly made in June 2016 in opposition to Ms. Lynn's motion for summary judgment in the 2010 Action. (*Id.* ¶¶ 45-46.)

B. **Procedural History**

On February 16, 2017, Plaintiffs filed the instant suit against Defendants asserting claims for: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, (2) civil conspiracy, (3) fraud, (4) tortious interference with contract, (5) trespass to chattels, and (6) violations of New York Judiciary Law § 487. (Doc. 1.) On March 13, 2017, Defendants filed a letter seeking a pre-motion conference in anticipation of their motion to dismiss on the basis that Plaintiffs' claims were insufficiently pleaded under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Doc. 16.) On March 30, 2017, Plaintiffs filed a response letter. (Doc. 28.) On March 31, 2017, a pre-motion conference was held at which Defendants' possible motion to dismiss was discussed.[1] On that date the Court granted Plaintiffs leave to file an amended complaint. (Minute Entry dated Mar. 31, 2017.) The AC, filed on May 1, 2017, asserts the claims raised in Plaintiffs' original complaint, with the exception of civil conspiracy and trespass to chattels, and added claims for malicious prosecution and abuse of process. (*See* Doc. 38.) On June 15, 2017, Defendants moved to dismiss the AC, (Doc. 47), raising four grounds for dismissal: (1) res judicata, (2) litigation privilege, (3) standing, and (4) failure to state a claim, (Doc. 49). Plaintiffs filed a brief in opposition on August 30, 2017, (Doc.

---

[1] At that conference, Defendant Christopher P. Gallagher's anticipated motion to dismiss on the basis of judicial immunity also was discussed. That motion was subsequently filed, (Doc. 42-11), briefed, (Docs. 42, 44, 45), and granted, (Minute Entry dated June 8, 2017).

4

51 ("Ps' Opp.")), and Defendants replied on September 13, 2017, (Doc. 53).

## II. DISCUSSION

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (emphasis and internal quotation marks omitted),[2] and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

B.   **Documents Properly Considered**

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in

---

[2] The Court will send Plaintiffs copies of all unpublished opinions cited in this ruling.

original) (citation and internal quotation marks omitted).  A court may take judicial notice of public records such as pleadings, orders, judgments, and other documents from prior litigation, including state court cases, *Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012); *see Gertskis v. E.E.O.C.*, No. 11-CV-5830, 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013) ("A district court reviewing a motion to dismiss may also consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits."), but it does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Plaintiffs attached four exhibits to their opposition brief:  (1) a Decision and Order from the New York Supreme Court in Rockland County dated June 2, 2015, (Ps' Opp. Ex. A); (2) a Decision and Order from the New York Supreme Court in Schenectady County dated December 29, 2016, (*id.* Ex. B); (3) an Order dated August 3, 2016, from the New York Supreme Court in Schenectady County, (*id.* Ex. C); and (4) the transcript of an oral argument dated July 7, 2016, in New York Supreme Court in Schenectady County, (*id.* Ex. D).[3]  Defendants attached four exhibits to the affirmation of their counsel, (Doc. 48 ("Nelson Aff.")):  (1) Plaintiffs' Amended Complaint and accompanying exhibits, (*id.* Ex. A); (2) a complaint and corresponding exhibits filed by Plaintiffs in New York Supreme Court in Rockland County dated August 19, 2014, (*id.* Ex. B); (3) the Decision and Order from the same Rockland County case dated June 2, 2005, (*id.* Ex. C); and (4) a decision from Westlaw in *Trustco Bank v. Pearl Mont Commons, LLC*, 45 N.Y.S.3d 654 (N.Y. App. Div. 2017), denying Ms. Lynn's appeal from an order of the New

---

[3] Plaintiffs technically submitted the August 3, 2016 Order and the July 7, 2016 oral argument transcript together as Exhibit C, leaving Exhibit D blank.  I assume this was a filing error.  For that reason, and for the sake of clarity, I refer to the oral argument transcript as Exhibit D.

7

York Supreme Court in Schenectady County, (*id.* Ex. D).

Because each exhibit is a pleading, decision, or other document from this lawsuit or prior state-court actions involving the parties, the Court may take judicial notice of such decisions pursuant to Rule 201 of the Federal Rules of Evidence and will consider the exhibits in deciding Defendants' motion, although they have little effect on my disposition.

### C.    Failure to State a Claim

#### 1.    *RICO (Claims 1 and 3)*

Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To state a claim under § 1962(c), a plaintiff must plausibly allege that a defendant engaged in (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity (5) resulting in (6) injury to business or property.  *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999).  The requirements of § 1962(c) must be established as to each individual defendant.  *De Falco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).

Plaintiffs assert civil RICO claims against all Defendants.  Specifically, Plaintiffs allege that Trustco, along with its CEO, employees, and lawyers, "sought to extort, defraud and otherwise tortuously [*sic*] injure [P]laintiffs, their estates and every aspect of their lives, by means of a plan they conceived and executed."  (AC ¶ 34; *see id.* ¶¶ 16, 50.)  According to Plaintiffs, "[t]he RICO enterprise is Trustco Bank and [its CEO] Robert McCormick, Jr. who formed an association-in-fact."  (*Id.* ¶ 50.)  The alleged ultimate aim of the enterprise was "to create enough pressure on the [P]laintiffs . . . to extort them into stop sharing [*sic*] information

8

with the public, through [Mr. Lynn's] book . . . titled 'Highgate to Hell', which . . . formed the trigger for all the subsequent retaliatory legal action taken by these Defendants." (*Id.* ¶ 35.) By Plaintiffs' account, Defendants made false and misleading statements in connection with various court proceedings, (*see, e.g.*, ¶¶ 37, 42); "obstructed [Plaintiffs'] quest to obtain justice," (*id.* ¶ 44); and "sought to inflict maximum damage to the Plaintiff's [*sic*] reputation, to put personal and psychological pressure on them as owners of [PMC], to disrupt relations with their . . . creditors, and to force the Plaintiff's [*sic*] into financial devastation," (*id.* ¶ 36). Plaintiffs' RICO claims must be dismissed because, at a minimum, they fail to adequately plead a RICO enterprise.

A RICO "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As the Supreme Court has explained,

> [t]he enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. . . . [It] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. . . . The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved.

*United States v. Turkette*, 452 U.S. 576, 583 (1981); *accord First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). Similarly, the "enterprise" is distinct from the "person[s]" who participate in the conduct of its affairs. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2002) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.").

Plaintiffs merely allege in a conclusory fashion that Trustco and McCormick, along with some of their staff and outside counsel, were part of an association-in-fact aimed "to create loans and then force default" in an effort to defraud and injure Plaintiffs. (AC ¶ 50; *see id.* ¶ 34.) The AC, however, does not plausibly allege how Defendants existed as an association-in-fact separate and apart from the alleged RICO activity. Plaintiffs allege that Defendants came together for the purpose of engaging in the fraudulent activity that forms the basis of the asserted pattern of racketeering activity. (*See, e.g.*, AC ¶¶ 35, 54-56, 58.) Consequently, "[t]he enterprise and the pattern in this case are one and the same." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009). The lack of a separate enterprise is fatal to the RICO claims. *See id.* (dismissing RICO claim because "allegations in the Amended Complaint fall short of alleging a RICO enterprise that existed separate and apart from any pattern of racketeering activity in which the Defendants and co-conspirators engaged"); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001) (dismissing RICO claim where plaintiff merely listed members of alleged enterprise and alleged that they were "combined in an association-in-fact") (internal quotation marks omitted); *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 97-98 (S.D.N.Y. 1993) (dismissing RICO claim where plaintiff alleged that "at various times as early as 1985, and possibly earlier . . . defendants were associated in fact for the common purpose, among others, of defrauding [plaintiff] through the loan transactions described in this complaint and other means" and that "[t]his association in fact was an 'enterprise,'" because "[c]onclusory allegations that disparate parties were associated in fact . . . are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an 'enterprise'") (internal quotation marks omitted), *aff'd*, 27 F.3d 763 (2d Cir. 1994).

Further, because a corporation can act only through its employees, subsidiaries, or agents, "'a corporate defendant can[not] be liable for participating in an enterprise comprised only of its agents . . . [because] then RICO liability will attach to any act of corporate wrong-doing and the statute's distinctness requirement will be rendered meaningless.'" *U1IT4Less, Inc. v. FedEx Corp.*, 871 F.3d 199, 205-06 (2d Cir. 2017) (quoting *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013)). "Accordingly, a plaintiff may not circumvent the distinctness requirement 'by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'" *Id.* at 206 (quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (holding corporation was not distinct from alleged enterprise consisting of corporation and some of its own employees)). This principle "has its limits and 'does not foreclose the possibility of a corporate entity being held liable . . . where it associates with others to form an enterprise that is sufficiently distinct from itself.'" *Id.* (alteration in original) (quoting *Riverwoods*, 30 F.3d at 344).

Here, Plaintiffs have alleged an association-in-fact consisting only of Trustco and its own employees and agents carrying out its business, and fail to plausibly allege that the enterprise is sufficiently distinct from Trustco. "Second Circuit law . . . holds that a corporation acting in concert and in the ordinary course of business with its agents and employees is not a RICO enterprise, whether or not the agents are external or internal to the corporation," even where that business is alleged to be fraudulent. *In re: Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543, 14-MC-2543, 2016 WL 3920353, at *13 (S.D.N.Y. July 15, 2016) (collecting cases); *see Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (defendant corporation, chief operating officer and corporate counsel could not form enterprise because complaint merely

alleged that COO and counsel carried out "the regular affairs of [the defendant], such as day-to-day financial operations, including the implementation and supervision of deceptive trading practices")) (internal quotation marks omitted). Thus, as in *General Motors* – where the plaintiffs failed to state a claim where they alleged a RICO associated-in-fact enterprise consisting of a corporation, its outside counsel and its claims administrator, *see* 2016 WL 3920353, at *12, *14 – Plaintiffs here fail to state a claim against Trustco because the association-in-fact they allege is comprised of Trustco and its employees and agents conducting Trustco's corporate business of collecting on its judgments against Plaintiffs.

And while a corporate agent or employee can be a "person" who conducts the affairs of the corporate "enterprise," *Cedric Kushner Promotions*, 533 U.S. at 164, here there is no allegation that the officer alleged to have been part of the enterprise – CEO McCormick – committed, or had anything to do with, any of the allegedly fraudulent acts, so the claim against him is not plausible. *See D. Penguin Bros. Ltd. v. City Nat'l Bank*, Nos. 13-CV-41, 13-CV-706, 2014 WL 982859, at *3 (S.D.N.Y. Mar. 11) (complaint must show, as to each individual defendant, that he participated in conduct of affairs of enterprise through commission of at least two predicate acts of racketeering), *aff'd*, 587 F. App'x 663 (2d Cir. 2014) (summary order). Nor is it plausible that an employee who signed an affidavit containing an allegedly false statement or the lawyers who pursued the litigation against Plaintiffs on Trustco's behalf had any control over the alleged enterprise sufficient to amount to participation in the enterprise's affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (to conduct or participate, directly or indirectly, in the conduct of the affairs of an enterprise, "one must participate in the operation or management of the enterprise itself"); *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 415 (E.D.N.Y. 2017) ("[A] person may not be held liable merely for taking directions and

performing tasks that are necessary and helpful to the enterprise, or for providing goods and services that ultimately benefit the enterprise.") (internal quotation marks omitted); *Singh v. Parnes*, 199 F. Supp. 2d 152, 163 (S.D.N.Y. 2002) ("There is no indication that in carrying out the activities Singh alleges, the defendants were carrying out the affairs of an unlawful enterprise as defined by the statute, rather than their own affairs or those of their institutional employers, principals or partners.").

Accordingly, the substantive RICO claims are dismissed.

2. *Conspiracy to Violate RICO (Claims 2 and 4)*

"Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of subsections § 1962(a)-(c)." *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 89 (E.D.N.Y. 2011); *see* 18 U.S.C. § 1962(d). To adequately plead a claim of conspiracy to violate RICO, the underlying substantive claim must also be adequately pleaded. *See Crabhouse of Douglaston Inc.*, 801 F. Supp. 2d at 89; *see also First Capital Asset Mgmt., Inc.*, 385 F.3d at 182 (RICO conspiracy claim properly dismissed where plaintiffs did not adequately allege substantive RICO violation); *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 108 (D. Conn. 2014) (RICO conspiracy claim necessarily fails where underlying substantive claim is inadequately pleaded). Accordingly, Plaintiffs' failure to plead a substantive RICO claim, as discussed above, necessarily means that their conspiracy claim is inadequately pleaded and must be dismissed as well.

3. *State Law Claims*

In addition to their RICO claims, Plaintiffs allege several causes of action under state law. The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are

eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that all of the claims over which this Court has original jurisdiction[4] should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)).[5]

## III. LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended once, (Doc. 38), after having the benefit of a pre-motion letter from Defendants outlining their proposed grounds for dismissal, (Doc. 16), and the Court's observations during the March 31, 2017 conference. Plaintiffs' failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend *sua sponte*. *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to

---

[4] Plaintiffs allege only federal-question jurisdiction in the AC. (AC ¶ 1.) They further allege that all parties are citizens of New York, (*id.* ¶¶ 3, 5-13), so diversity jurisdiction does not exist.

[5] In light of my disposition, I need not address preclusion, litigation privilege, standing, or other issues raised by the parties.

14

cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*.").

Further, Plaintiffs have not asked to amend again or otherwise suggested they are in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The federal claims (Counts 1-4) are dismissed with prejudice, and the remaining claims (Counts 5-9) are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 47), and close the case.[6]

**SO ORDERED.**

Dated: December 18, 2017
 White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.

---

[6] The claims against Defendant Gallagher were dismissed from the bench on June 8, 2017, (*see* Minute Entry dated June 8, 2017), and he should be terminated as a Defendant as of that date.